Filed 2/24/23  P. v. Desilva CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE, | C096566 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 21CF02914, 22CF01073) |
| v. | |
| MARY JEANNETTE DESILVA, | |
| Defendant and Appellant. | |

Defendant Mary Jeannette Desilva pleaded no contest to identity theft and failure to appear and the trial court sentenced her to the middle term of two years for identity theft and to a consecutive term of eight months (one-third the middle term) on a separate charge of failure to appear on her own recognizance.  Defendant argues the trial court erred in not sentencing her to the lower term because she was a youthful offender under Penal Code section 1170, subdivision (b)(6), as amended by Senate Bill No. 567 (2021-

1

2022 Reg. Sess.) (Senate Bill 567).[1]  Because the trial court made the findings required to impose the middle rather than the lower term in this case, and those findings are supported by the record, we conclude any arguable error was harmless and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A June 4, 2021 complaint charged defendant with two counts of identity theft (Pen. Code, § 530.5, subd. (a))[2] and two counts of forgery.  (§ 470, subd. (d).)  It also alleged defendant had one or more serious and violent felony convictions under sections 667, subdivision (d) and 1170.12, subdivision (b).[3]  Because defendant failed to appear at a subsequent hearing, she was charged in a second case with failure to appear and that she committed that offense while she was on bail or own recognizance release.  (§§ 1320, subd. (b), 12022.1.)

We take the following facts from the probation report.  On January 1, 2021, someone stole 40 payroll checks from a business mailbox belonging to JA Labor Services Inc.  Throughout January and February 2021, a woman attempted to cash some of the checks at a local market, a check cashing business, two different casinos, and a bank.

---

[1]    While defendant cites Assembly Bill No. 124 (2021-2022 Reg. Sess.), three bills amending section 1170 were enacted and signed into law on the same date.  (Stats. 2021, ch. 695, § 5, eff. Jan. 1, 2022 (Assem. Bill No. 124); Stats. 2021, ch. 719, § 2, eff. Jan. 1, 2022 (Assem. Bill No. 1540) (2021-2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022 (Sen. Bill No. 567).)  Senate Bill 567—which takes precedence because it was enacted last (Gov. Code, § 9605)—states that if all three bills amending section 1170 are enacted and become effective on or before January 1, 2022, and Senate Bill 567 is enacted last, then section 1.3 of that bill, which incorporates the amendments proposed by Senate Bill 567, Assembly Bill No. 124, and Assembly Bill No. 1540, shall become operative.  (Stats. 2021, ch. 731, § 3.)  We shall refer to the operative bill.

[2]    Undesignated statutory references are to the Penal Code.

[3]    Specifically, defendant was convicted on March 1, 2021, of robbery under section 211.

During a second attempt to cash a check at the market, the owner advised the woman to return the checks to their rightful owner. One of the casinos confirmed the woman who cashed the checks presented defendant's driver's license. When she was arrested, officers told defendant she was captured on video attempting to cash checks at the casino. Defendant did not dispute the accusation, but asked if there was a difference between attempting to cash checks and actually cashing the checks. She admitted to experiencing peer pressure and having a drug problem, which contributed to poor decisionmaking, but said she did not believe she was doing anything wrong and that there should be no consequences for her actions.

Ultimately, defendant pleaded no contest to one count of identity theft and a separate count for failure to appear. All other charges and enhancements were dismissed with a *Harvey*[4] waiver.

The probation report first defined the "appropriate term" as the middle term in prison of two years. It then stated defendant was eligible for a probationary sentence, and listed the applicable criteria affecting probation pursuant to California Rules of Court, rule 4.414,[5] including that defendant was an active participant in the crime and that her criminal record "reflects a pattern of regular or increasingly serious criminal conduct." The remainder of the criteria set forth in the report weighed in favor of granting probation, including that defendant had expressed remorse.

Defendant's criminal record as reflected in the probation report consisted of a December 2015 conviction for larceny (§ 490.5, subd. (a)); a conviction in December 2019 for assault with a deadly weapon (§ 245, subd. (a)(1)); a conviction in March 2021 for robbery (§ 211—for conduct in Sept. 2020); and a June 2021 conviction for hit and run. (Veh. Code, § 20002, subd. (a).)

---

**4**     *People v. Harvey* (1979) 25 Cal.3d 754.

**5**     Undesignated rule references are to the California Rules of Court.

In the section of the probation report reserved for a recitation of circumstances in aggravation and mitigation pursuant to rules 4.421 and 4.423, the reporting officer consistently indicated, "None noted." The report then noted as a "[p]otential [l]ower [t]erm [l]imit" that defendant was a youth and the trial court would be constrained to the lower term under section 1170, subdivision (b)(6) unless it found that "the circumstances in aggravation outweigh those in mitigation such that imposition of the lower term would be contrary to the interests of justice." The report first opined defendant was a suitable candidate for probation, and ultimately indicated that the probation officer was recommending a grant of 24 months of formal probation. But the report also confusingly related that if the court were to conclude a prison sentence was warranted, "[r]ules . . . 4.421 and 4.423 were reviewed to determine the appropriate term," and that while defendant's case fell "within the provisions of [section] 1170(b)(6) PC within the meaning of Senate Bill 567 in that defendant would be considered a 'youth,' " the middle term in prison was recommended. There was no reason given in the probation report to explain the jump from a recommendation of probation and the acknowledgement that defendant's case fell within the requirements for a lower term absent specific findings to the recommendation of a middle term in prison.

At sentencing, the trial court indicated (without elaboration) that it intended to impose the middle term and gave counsel the opportunity to address the court.

Defense counsel argued that "the Court [should] follow the recommendation of probation. [¶] [Defendant] does have a colorful history; however, she does have . . . a narcotics issue that she's been dealing with. So I believe that that helps mitigate this. However—and if I may, I'm pulling it up right now, Your Honor, I'm asking that the Court also find the presence of the super-mitigator that's present pursuant to [section] 1170. At the time this offense occurred, [defendant] was 25 years old; therefore, she was considered to be a youthful offender at the time. All of her history has been such as a youthful offender. So, therefore, the lower term would be appropriate in this matter,

4

because of presence of the super-mitigator. [¶] So, therefore, I'm asking that the Court deviate from its indicated ruling, grant probation, or, in the alternative, grant the lower term."

After a short argument from the prosecutor, the trial court stated, "There are no statutory restrictions on granting probation in this case; however, I am denying defendant's application for probation for the following reasons: The degree of potential monetary loss to the victims; Defendant stole 40 payroll checks from the mailbox and tried to cash several of those checks; Defendant was an active[] participant in this crime; Defendant's prior record of criminal conduct; and Defendant's lack of remorse. [¶] There is a box checked on the probation report that says the defendant was remorseful. I have gone through her entire statement, and I disagree the defendant is remorseful. In fact, she indicated that she didn't think that she was hurting anybody personally." The court also noted that "any one of these reasons" would justify its denial of probation.

The court continued, "In reviewing [rules] 4.421, and 4.423, this Court does not find that aggravating circumstances outweigh the mitigating circumstances. [¶] I also recognize Defendant as a youth pursuant to [] Section 1170(b)(6); however, I find that imposition of a lower term would not be in the interest of justice because there are aggravating factors that warrant the imposition of a middle term. That is based on the following factors in aggravation: Defendant's prior convictions as an adult—this is her third theft conviction; and I was unable to find any factors in mitigation."

The trial court imposed the two-year middle term for the identify theft count and a consecutive term of eight months (one-third the middle term) on the failure to appear count. When the court asked if there was anything else, defense counsel responded in the negative.

Defendant timely appealed.

5

DISCUSSION

Defendant contends the trial court should have sentenced her to the lower term because the trial court concluded, on the one hand, the aggravating factors did not outweigh the mitigating circumstances but, on the other hand, found imposition of the lower term would be contrary to the interests of justice. The Attorney General argues: (1) this contention was forfeited because defendant failed to object after sentence was imposed; (2) the trial court did not find defendant's youth was a contributing factor to this crime; and (3) the trial court properly determined sentencing defendant to the lower term was contrary to the interests of justice. We disagree with the Attorney General's first two arguments, but agree with the last.

Pursuant to Senate Bill 567, effective January 1, 2022, section 1170 was divided into subparts. (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(1) now provides "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." The referenced exception provides an upper-term sentence may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) Additionally, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense," including "(B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the

6

offense." (§ 1170, subd. (b)(6).) A youth under section 1016.7 is "any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).) Defendant was 24 years old at the time she committed the first offenses.

In support of its forfeiture argument, the Attorney General cites *People v. Scott* (1994) 9 Cal.4th 331. *Scott* rests on the sound principle that "[i]n order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have required parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim. [Citations.]" (*Id.* at p. 351, italics omitted.) *Scott* thus holds defendants cannot argue for the first time on appeal that the trial court failed to properly make or articulate discretionary sentencing choices. (*Id.* at pp. 352-353.)

Here, however, defendant argued below that she was a youthful offender entitled to be sentenced to the lower term under section 1170. Thus, she did not forfeit the challenge by failing to raise it again after the court imposed sentence.

The Attorney General next argues the trial court did not find defendant's youth was a contributing factor to this crime. We disagree. The trial court stated, "I also recognize Defendant as a youth pursuant to [] Section 1170(b)(6); however, I find that imposition of a lower term would not be in the interest of justice because there are aggravating factors that warrant the imposition of a middle term. That is based on the following factors in aggravation: Defendant's prior convictions as an adult—this is her third theft conviction; and I was unable to find any factors in mitigation." The trial court's recognition of defendant's youth under section 1170 and its immediate consideration of whether the lower term would be in the interests of justice demonstrates to us that the trial court considered defendant's youth as a contributing factor to these crimes.

That brings us to the heart of the analysis—whether there is a conflict between the trial court's initial statement that the "aggravating circumstances [did not] outweigh the

7

mitigating circumstances," and its later finding that "imposition of a lower term would not be in the interest of justice because there are aggravating factors that warrant the imposition of a middle term," such that the imposition of the middle term was error. " 'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in qualitative as well as quantitative terms.' [Citation.]" (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401.) Mindful of the presumption the trial court's judgment is correct and defendant must affirmatively show error (*People v. Giordano* (2007) 42 Cal.4th 644, 666), we conclude that these two seemingly contradictory statements do not affirmatively demonstrate error, and that the trial court's later finding is supported by the record, such that any error in the court's initial statement—clearly based on the probation report's confusing conclusion that there were neither aggravating nor mitigating factors present in this case pursuant to rules 4.421 and 4.423—was harmless..

Although we do not disagree that the trial court's initial finding seems incongruent with its later decision to impose the middle term based on the presence of defendant's prior convictions, the court correctly analyzed the question of whether the imposition of the lower term on a youthful offender under section 1170, subdivision (b)(6)(B) was contrary to the interests of justice and made the required findings, which are supported by the record. By finding defendant's prior convictions as an adult, which were numerous and set forth in the probation report, as a "factor[] in aggravation," and balancing the presence of that factor against the court's professed inability "to find any factors in mitigation," the court adequately performed the required analysis.[6] The presence of a

---

[6]     Although defendant argues that defendant's youth was a "super-mitigator" and thus the court's inability to identify any mitigating circumstances was error, defendant's youth and its contributions to her commission of the offenses at issue here had already rendered her presumptively entitled to the lower term sentence absent the required findings.

seemingly inconsistent finding prior to performance of the proper analysis, if assumed to be error, was therefore harmless.

DISPOSITION

The judgment is affirmed.


                                                      <u>     KRAUSE      </u>, J.


We concur:


<u>     DUARTE      </u>, Acting P. J.


<u>     EARL        </u>, J.